**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| JULIANA C. DONAYRE, individually, ) <br> and on behalf of others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INKAHOLIK TATTOOS, INC., ) <br> a Florida corporation, ) <br> ) <br> Defendant. ) | **Case No:** <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

**INTRODUCTION**

1. This action arises, in part, from Defendant's willful and knowing violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), which prohibits the use of an automatic telephone dialing system to send text messages to cell phones and other mobile services subject to two exceptions: (1) calls made for emergency purposes; and (2) calls made with the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

2. Defendant, in an effort to drum up business for its tattoo parlors, sent Plaintiff and others multiple unsolicited telemarketing text messages, using automatic telephone dialing equipment within the meaning of the TCPA, despite the fact they requested not to be called and/or their telephone numbers were listed on the national do-not-call registry.

3. It is well understood that "the right to be let alone" is one of the most valued rights in a civilized society. *See Olmstead v. United States*, 277 U.S. 438 (1928). Moreover, Courts in this state have recognized that "[t]he right of privacy, assured to Florida's citizens,

demands that individuals be free from uninvited observation of or interference in those aspects of their lives which fall within the ambit of this zone of privacy unless the intrusion is warranted by the necessity of a compelling state interest." *Shaktman v. State*, 553 So. 2d 148, 150 (Fla. 1989).

4. Accordingly, Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself, her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over the claims in this case under 28 U.S.C § 1331 because this action arises out of a violation of federal law, the Telephone Consumer Protection Act, 47 U.S.C § 227 *et seq*.

6. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendant conducts business in this district and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

7. Plaintiff, Juliana C. Donayre, ("Plaintiff") is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

8. Defendant, Inkaholik Tattoos, Inc. ("Defendant"), is a Florida corporation whose principal address is 8367 SW 40th St., Miami, FL 33155 and whose registered agent for service of process is Isabel C. Demelo, 8367 SW 40th St., Miami, FL 33155.

9. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's affiliates, subsidiaries, officers, directors, vice-

principals, agents, sub-agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees.

## AN OVERVIEW OF THE TCPA

10. The TCPA was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 744, 565 U.S. 368, 181 L. Ed. 2d 881 (2012).

11. The TCPA prohibits calls made to cellular phones through the use of an automatic telephonic dialing system (also known as an "autodialer" or "ATDS") or an artificial or prerecorded voice, unless the call was made for emergency purposes or with the "[p]rior express consent of the called party." 47 U.S.C § 227(b).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2013).

13. To demonstrate a violation of the TCPA, the Plaintiffs need only show that Defendant called a number assigned to a cellular telephone service using an automatic dialing

system or prerecorded voice. *Breslow v. Wells Fargo Bank, NA*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).

14. In 2012, the FCC issued an order tightening the restrictions for automated *telemarketing* calls, requiring "prior express *written* consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis added).

15. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent.... and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

16. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See *Golan v. Veritas Entm't, LLC,* 788 F.3d 814, 820 (8th Cir. 2015).

17. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012)).

18. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan,* 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

19. No person or entity shall initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 C.F.R. § 64.1200(c)(2).

20. No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d).

21. The rules set forth in paragraph (c) and (d) of § 64.1200 are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

22. An individual whose name is on the Do-Not-Call registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity without their consent has a private right of action under the TCPA. 47 U.S.C. § 227(c)(5).

23. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

24. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, ¶ 136 (2003).

25. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

26. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.,* No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

27. The TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or up to $500 per call for each violation. 47 U.S.C. § 227(b). It also allows the district court to increase the award up to treble

statutory damages if it finds the defendant's violation was willful or knowing. *Id.* at 1318. *See also Mims,* 132 S. Ct. at 746.

## FACTUAL ALLEGATIONS

28. Defendant claims to be Miami's best tattoo, piercing & body art studios. http://www.inkaholiktattoos.com/.

29. In order to drum up new business, Defendant partnered with the mobile marketing firm, Mobile Text Alerts, LLC ("Mobile Text"), to promote Defendant's tattoo parlors.

30. As a result thereof, from June 06, 2017 to the present, Defendant, using Mobile Text's automated mass text-messaging platform, caused more than 50 unsolicited text messages to be transmitted to Plaintiff's cellular telephone.

31. At all times relevant herein, Plaintiff exercised sole dominion and control over the cellular telephone to which Defendant was calling.

32. The text messages contained advertisements for specials on Defendant's tattoo and piercing services; they urge the consumer to follow Defendant's employee or agent on Instagram; they ask the consumer to contact the Defendant via phone number, or to visit the Defendant's physical locations.

33. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., Defendant's tattoo or piercing services.

34. At no point in time did Plaintiff provide Defendant with her express written consent to the receipt of the subject text messages.

35. Even if Plaintiff, at some point, unwittingly provided Defendant with express written consent, which she did not, Plaintiff on at least three separate occasions expressly demanded that Defendant cease sending text messages to her cellphone:

 



36. The fact that Plaintiff demanded that Defendant cease sending her text messages, yet the messages did not stop, is evidence sufficient to indicate that Defendant failed to institute procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

37. Nor is it Defendant's policy to refrain from calling individuals who have registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

38. Plaintiff's cellular telephone number should have been placed on an internal do-not-call list but was not.

39. And Plaintiff's cellular telephone number was on the national do-not-call registry more than 31 days prior to receiving the most recent text messages from Defendant,

received on January 13, 2018, mere days after instructing Defendant yet again to stop sending telemarketing text messages.

40. The impersonal and generic nature of Defendant's text messages, and the fact the subject text messages originated from mobile-text-alerts.com, demonstrates that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC,* No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.,* 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS).

41. Defendant's unsolicited text messages caused Plaintiff actual and tangible harm, including invasion of her privacy, the tying up of her phone line, depletion of battery life leading to less availability of her telephone line in the case of an emergency, aggravation at receiving so many unsolicited messages so frequently, annoyance, intrusion on seclusion, trespass, and conversion. Plaintiff suffered loss of time as a result of opening and seeing the text message, attempting to determine if there is a way to opt-out from the text messages, and answering back in attempts to have the mass messaging cease. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life. *See Patriotic Veterans, Inc. v. Zoeller,* No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious."). Plaintiff received many of Defendant's text messages while working, or engaged in important activity. She was disrupted by the call and had to stop what she was doing to answer her phone.

## CLASS ALLEGATIONS

42. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of herself and three separate classes of similarly situated individuals defined as follows:

> **No Consent Class**: *All individuals in the United States whose cellular telephone was called (texted) by Defendant using any automatic telephone dialing system or an artificial or prerecorded voice during the four years preceding the filing of this complaint without emergency purpose and without the recipient's prior express written consent.*
>
> **Internal Do-Not-Call Class:** *All individuals in the United States whose cellular telephone, within the four years prior to the filing of this complaint, was called (texted) by Defendant with a telephone solicitation after the person informed Defendant to stop calling or sending text messages.*
>
> **National Do-Not-Call Registry Class:** *All individuals in the United States whose telephone number(s) were registered with the National Do Not Call Registry at least 30 days prior to being called (texted) by Defendant more than once within a 12-month period during the four years preceding the filing of this complaint.*

43. Plaintiff is a member of all three classes. Excluded from the class are the Defendant, any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

44. **Numerosity:** Even though the exact number of Class members is known only to Defendant at this time, it is clear that individual joinder is impracticable. On information and belief, Defendant call records and verification processes will reveal that Defendant sent telemarketing text messages to hundreds, if not thousands of consumers' cellular telephones

throughout the United States who fall into the definitions of one or more of the proposed classes.

45.     **Typicality:** Plaintiff's claims are typical of the claims of other members of each of the three Classes, in that they all sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text messages.

46.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of any Class member and will act in the best interest of the classes at all times.

47.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class members, and those questions predominate over any questions that may affect individual members of either Class. Common questions include, but are not necessarily limited to the following:

   a. Whether Defendant made non-emergency calls (texts) to Plaintiff's and Class members' cellular telephones using an ATDS;
   b. Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls (texts);
   c. Whether the calls (texts) constitute telemarketing calls;
   d. Whether Defendant's control over its affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees was such that Defendant should be held vicariously liable for their actions;
   e. Whether the acts described herein were done with the full authorization, ratification or approval of Defendant or done in the routine normal course

and scope of employment of the Defendant's affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees;

f. Whether class members are entitled to treble damages based on the willfulness of Defendants' conduct;

g. Whether Defendant should be enjoined from engaging in such conduct in the future.

48. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods of fair and efficient adjudication of this controversy in which joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially in relation to the burden and expense that individual prosecution of the complex litigation necessitated by Defendant's actions would entail. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

49. Moreover, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged

acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the No Consent Class

50. Plaintiff realleges and incorporates paragraphs 1 through 49 as though fully set forth herein.

51. It is a violation of the 47 U.S.C. § 227(b)(1)(A)(iii) to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a cellular telephone service…" 47 U.S.C. § 227(b)(1)(A)(iii).

52. Defendant's violation of the 47 U.S.C. § 227(b)(1)(A)(iii) resulted in, among other things, an invasion of Plaintiff's privacy and right to enjoy the full utility of her cellular device.

53. Defendant is directly and/or vicariously liable for the violations above.

54. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(b)(3). Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and other members of the class.

**WHEREFORE**, Plaintiff, Juliana C. Donayre, on behalf of herself and the members of the No Consent Class, respectfully request the following relief:

a. An Order certifying No Consent Class;

    b. A declaration that Defendant's practices described herein violate 47 U.S.C. § 227(b)(1)(A)(iii);

    c. An injunction prohibiting Defendant from using an automatic telephone dialing system to text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

    d. An award of statutory damages in the maximum amount allowed by law, and;

    e. Such further and other relief the Court deems reasonable and just.

## COUNT II
### Violation of Delivery Restrictions, 47 C.F.R. § 64.1200(c)(2)
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

55. Plaintiff realleges and incorporates paragraphs 1 through 49 as though fully set forth herein.

56. It is a violation of the rules promulgated under the TCPA to initiate any telephone solicitation to A residential [or cellular[1]] telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 C.F.R. § 64.1200(c)(2).

57. Defendant's violation of 47 C.F.R. § 64.1200(c)(2) resulted in, among other things, an invasion of Plaintiff's privacy and right to enjoy the full utility of her cellular device.

58. Defendant is directly and/or vicariously liable for the violations above.

59. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(c)(5). Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and other members of the class.

---

[1] *See,* 47 C.F.R. § 64.1200(e)

**WHEREFORE**, Plaintiff, Juliana C. Donayre, on behalf of herself and the members of the No Consent Class, respectfully request the following relief:

f.  An Order certifying the **National Do-Not-Call Registry Class**;

g.  A declaration that Defendant's practices described herein violate 47 C.F.R. § 64.1200(c)(2);

h.  An injunction prohibiting Defendant from calling person who have registered his or her telephone number on the national do-not-call registry;

i.  An award of statutory damages in the maximum amount allowed by law, and;

j.   Such further and other relief the Court deems reasonable and just.

## COUNT III
### Violation of Delivery Restrictions, 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the Internal Do-Not-Call Class)

60. Plaintiff realleges and incorporates paragraphs 1 through 49 as though fully set forth herein.

61. It is a violation of 47 C.F.R. § 64.1200(d) to initiate any call for telemarketing purposes to a residential [or cellular[2]] telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d).

62. Defendant's violation of 47 C.F.R. § 64.1200(d) resulted in, among other things, an invasion of Plaintiff's privacy and right to enjoy the full utility of her cellular device.

63. Defendant is directly and/or vicariously liable for the violations above.

64. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(c)(5). Should the Court determine that Defendant's misconduct was willful and

---

[2] *See,* 47 C.F.R. § 64.1200(e)

knowing, the Court may, pursuant to section 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and other members of the class.

**WHEREFORE**, Plaintiff, Juliana C. Donayre, on behalf of herself and the members of the No Consent Class, respectfully request the following relief:

k. An Order certifying the **Internal Do-Not-Call Class**;

l. A declaration that Defendant's practices described herein violate 47 C.F.R. § 64.1200(d)(2);

m. An injunction prohibiting Defendant from calling or texting individuals who have expressed a desire not to be called or texted and whose name should appear on Defendant's internal do-not-call list;

n. An award of statutory damages in the maximum amount allowed by law, and;

o. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

65. Plaintiff and Class Members hereby demand a trial by jury.

Date: January 17, 2018                                Respectfully submitted,

/s/ Karl C. Gonzalez
Karl C. Gonzalez, Esq. (FBN 1003869)
KARL C. GONZALEZ, PLLC
17113 Miramar Parkway, Suite #152
Miramar, FL 33027
Tel: 833-527-5529
karl@karlgonzalez.com

Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588

Fax: 954-337-0666
scott@scottdowens.com